In the Matter of the ESTATE of Wilbur HOEVET, Deceased.

Margaret A. HOEVET, Appellant (Proponent below),

v.

Paul L. HOEVET, Appellee (Objector below).

No. 3611.

Supreme Court of Wyoming.

Jan. 26, 1968.

Marvin L. Bishop III, of Bishop & Bishop, Casper, for appellant.

J. B. Sullivan, Douglas, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Margaret A. Hoevet, sole beneficiary under the will of Wilbur Hoevet, deceased, her former husband, filed a petition for probate of the will.[1] Deceased's son objected and upon hearing the court entered judgment denying the probate on the ground that there had been a divorce of the Hoevets accompanied by an exchange of deeds immediately following, which together constitute an implied revocation of the will. This appeal resulted.

There is no dispute as to the facts although some are emphasized by one of the parties more than by the other. The Hoevets were married on September 5, 1951. In October of that year he executed the will in question, bequeathing everything to her. On her petition a divorce was entered September 22, 1953, in Natrona County with no property mentioned in the decree, she now testifying that each retained his respective property. On the day following the divorce, she executed a quitclaim deed to him covering certain real property in Converse County, owned by him prior to the marriage, which deed was in evidence at the trial. She testified that she thought he had also executed a quitclaim deed to her, saying, "We turned our property back to one another. I tried to take nothing of his, he tried to take none of mine." She said that at the time of the divorce she was living in Casper, and had not lived in Glenrock (where Wilbur Hoevet had lived prior to their marriage), that "[he] started moving his things up 2 weeks before we were married, and by the time we were married, he moved right in * * * my property." Shortly after the divorce each of the Hoevets took a copy of his own will from the attorney and the deceased kept his until some three or four years before his death in August 1965 when he gave her the will together with the deed to his real property, a blank check on the Converse County Bank with his full name signed thereon,

1. The listing of property included a parcel of land in Converse County, valued at approximately $3,000, three motor vehicles, Ford tractor and attachments, hay bailer, hand tools, elevator and compressor, as well as $3,144.49 on deposit in the Converse County Bank, Douglas.

and a watch, all of which she kept until the time of his death. Several years after her divorce from the deceased, Margaret remarried, but this union lasted only some thirty days or so, and from various uncontradicted testimony she and the deceased following their divorce continued to live as man and wife.

The memorandum opinion of the trial court contains some statements that may be significant, "There seems to be much evidence to support the contention of the proponent that in the years following the divorce, the decedent may have intended that his former wife take under the will * * *. The divorce, standing alone, was not enough to revoke the Will. * * * But I cannot ignore the exchange of the quitclaim deeds which occurred in connection with the divorce. * * * I would judge from the authorities cited that the general rule in most of the courts is that a divorce accompanied by a division works an implied revocation of the Will * * *." Accordingly the judgment dismissing the probate of the will contained the finding that "On the evidence and the authorities cited the Court finds that the divorce, standing alone, was not enough to revoke the Will, but that the divorce accompanied by the exchange of deeds constitutes an implied revocation * * *."

We would hesitate to place a stamp of approval upon the trial court's statement as to the "general rule in most of the courts," although there · is indeed a conflict of authority as to whether or not an adjustment of a divorced husband and wife's property by mutual consent operates as a revocation. 2 Bowe-Parker: Page on Wills, pp. 522 and 523, nn. 2 and 3 (1960). In Johnston v. Laird, 48 Wyo. 532, 52 P.2d 1219 (1935), where there was an annulment of marriage and a settlement by decree of court, Judge Blume recognized the substantial unanimity among the courts at that time concerning an implied revocation of the husband's prior will where a divorce is coupled with a settlement of property rights between the parties. In view of the annul-

ment in the Johnston case, the "property settlement" (the home which the parties had occupied and the receipt of $2,000 by the wife), and other circumstances present, Judge Blume held the will involved therein was revoked. He took some pains however to emphasize that the rule relating to such revocations had its limitations, that it "depends on the circumstances." Looking to the proven facts in the instant case, we note that the divorce between the Hoevets was apparently a pro forma matter in which the decree recites, "Plaintiff appearing in person * * * and the defendant having entered his general appearance and consent that said cause of action may be tried by the Court without further notice to him." This coupled with the undisputed fact that the two continued to live together and acted as husband and wife minimizes the conceded unimportance of the divorce. As to the deed given by Margaret to Wilbur, this was for Wilbur's Glenrock property, which was not occupied by the Hoevets during their marriage but was the property he had owned in his own name and occupied prior to his marriage to Margaret. It is conceivable of course that an exchange of quitclaim deeds could under certain circumstances effect a property settlement. However, there is no proof here that such was the case, and it must be assumed to the contrary since the person objecting to the probate of the will had the burden of proving otherwise. Under the state of the record, the giving of the quitclaim deed by Margaret to Wilbur and the casual reference to a quitclaim deed from him to her did not constitute per se a revocation of the will.

Reversed.

Mr. Justice McINTYRE, dissenting.

In Johnston v. Laird, 48 Wyo. 532, 52 P.2d 1219, 1222, Justice Blume stated there seems to be substantial unanimity among the courts dealing with the question, that when a divorce is coupled with a settlement of property rights between the parties, the change of circumstances is such as to impliedly revoke the husband's prior will.

The opinion of Justice Parker in the case now before us does not undertake to justify a reversal of the *Johnston* decision. Indeed it does not purport to reverse such decision. Instead, it holds there was an absence of substantial evidence of a property settlement.

However, I can scarcely imagine how evidence of a property settlement could be more clear and more conclusive than it was in the instant case. The divorced wife testified, "We turned our property back to one another. I tried to take nothing of his, he tried to take none of mine."

Moreover, not only were the terms and basis upon which property rights were settled testified to by the divorced wife, but the exchange of quitclaim deeds between the parties actually implemented the settlement which the parties had agreed to.

To imply, as the majority opinion does, that the only evidence of a property settlement was the exchange of deeds, and that this evidence was not substantial or sufficient, is hardly fair to contestant or to the trial judge who found the evidence showed there was a property settlement. It overlooks the principal evidence of a property settlement—evidence by the way which was not disputed.

As far as evidence of the exchange of deeds is concerned, it corroborated and verified the property settlement agreement of the parties, as testified to by proponent, to the effect that the parties turned back to each other their property so that she took nothing of his and he took nothing of hers. Not only that, but it was testified that the parties picked up their wills from their attorney. This further corroborates the property settlement described in the testimony of the former wife.

As I see the record before us, there was ample evidence for the trial court's finding that there was a settlement of property rights between the parties, at the time of the divorce. I would affirm the judgment of the district court.